IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 2020

## DENNIS JUDGE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Moore County**
**No. 2015-BO-1366      Forest A. Durand, Jr., Judge**

### No. M2019-00237-CCA-R3-PC

The Petitioner, Dennis Judge, pleaded guilty to sexual battery by an authority figure, and the trial court sentenced him to the agreed sentence of four years of Community Corrections. More than a year later, the Petitioner filed a motion requesting that the trial court allow him to file an untimely petition for post-conviction relief and also a petition for post-conviction relief. After a hearing, the post-conviction court found that due process did not require a tolling of the statute of limitations, and it dismissed the petition. After a thorough review of the record and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, Jr., JJ., joined.

Robert L. Sirianni, Jr., Winter Park, Florida, for the appellant, Dennis Judge.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Holly Eubanks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from inappropriate contact between the Petitioner and his stepdaughter's daughter. For this contact, on January 26, 2016, the Moore County grand jury indicted the Petitioner for one count of sexual battery by an authority figure of the victim, who was over thirteen but less than eighteen at the time of the offense.

On April 7, 2017, the trial court began a trial, before the conclusion of which the

trial court accepted the Petitioner's plea of guilty to the charged offense.

A copy of the trial proceedings is included in the record. After the jury was empanelled, the victim's mother, M.O.,[1] testified that she had three children: two sons, twenty and twenty-one years old respectively; and a sixteen-year-old daughter. The Petitioner was M.O.'s stepfather, and she had known him as a father figure since she was thirteen years old. He was in fact the only father that she had ever known and the only grandfather that her children had ever known. After M.O.'s divorce from her husband, she lived for some period of time with her mother and the Petitioner, and, when she moved out, she moved within ten minutes of her parents' home.

M.O. testified that in late 2014 and early 2015 her mother was battling cancer, and M.O.'s daughter, the victim, acted as M.O.'s mother's "nurse," visiting with M.O.'s mother often. The victim spent the night at the Petitioner's house with the Petitioner and the victim's grandmother. M.O. testified that the victim became "distant" and expressed hesitation about going to the Petitioner's house. When M.O. did leave the victim at the Petitioner's home, the victim would call and ask to be picked up. Eventually, M.O. asked the victim if something had happened, and, after their conversation, M.O. contacted law enforcement. Law enforcement interviewed the victim and then arrested the Petitioner.

In a hearing outside the presence of the jury, regarding the Petitioner's 404(b) motion, the victim testified that she was sixteen years old at the time of trial and thirteen or fourteen at the time of the assault. She said that she had known the Petitioner, her step-grandfather, her whole life and that she often went to her grandparents' house on the weekends to help take care of her grandmother. The victim said that her hugs from the Petitioner began to feel inappropriate, noting that she felt his erect penis when he hugged her. The victim felt scared. The victim said that, one time, as she was bent over getting food from a kitchen cabinet, the Petitioner came up behind her and rubbed himself against her. The victim also described an incident during which she and both her grandparents were in the living room. The Petitioner was seated such that she could see the screen of his laptop, but her grandmother could not. The Petitioner's screen depicted something about a "penis enlargement," and the victim could see that he was touching his penis while viewing the screen. She further detailed how the Petitioner covered one side of himself with a blanket, so her grandmother could not see what he was doing, but lowered the blanket on her side so she could see him manipulating his penis.

The victim testified about another incident, saying that she was at her grandparents' house spending the night. She was sleeping on the couch when she felt a "cool breeze" on her breasts. She jerked her shirt down, and saw the Petitioner walking

---

1 To protect the victim's privacy, we will refer to her mother by her initials only.

away from her. She went to the bathroom, and the Petitioner got ready for work. Before he left for work, the incident that was the basis of the charge occurred. The charge was based on the allegation that the Petitioner lifted her shirt and, with his other hand, touched her vagina.

At the conclusion of the 404(b) hearing, the trial court ruled that the victim could not testify about the laptop incident to the jury. The court further ruled that she could only testify on rebuttal and for a limited purpose about the incidents when the Petitioner hugged her or rubbed his penis on her back. The trial court ruled that she could testify about the breast incident that occurred shortly before and during the same morning of the assault.

After the trial court's ruling, the Petitioner offered and the trial court accepted his plea of guilty to the charged offense. The parties agreed to a four-year Community Corrections sentence, with the "usual provisions," and a "no contact" order with the victim. The trial court ensured that the Petitioner understood that he would be subject to the sex offender registry.

The trial court reviewed the Petitioner's rights with him, including that he was entering a plea of guilty to sexual battery by an authority figure, a Class C felony punishable by three to six years in prison. The trial court reiterated, "Of course, you must register and report to the sex-offender registry."

The State then informed the trial court that, had the trial proceeded, the evidence would have proven:

[O]n or about March 7th 2015, Investigator Rainey, at the Moore County Sheriff's Department, received a report from [M.O.], who's the mother of the victim in this case, that the child's step-father, [the Petitioner], had, apparently, inappropriately touched her daughter. Investigator Rainey started investigating this allegation, a forensic interview was conducted on the child. They talked about, amongst themselves, to establish a timeframe. The child remembered that she got her first smartphone, and i-phone, for Christmas, and that it was at the beginning of the year, but up to about the beginning of February. She's involved in various activities including but not limited to pageants that enabled her to narrow down the timeframe when this happened. And what she says happened is that, she would stay the night at her grandmother's house.

The [Petitioner] is married to her grandmother and she's known him all her life. That she was sleeping on the sofa, she initially felt what she

3

described as a cool breeze on her upper body part, sort of turned over, pulled her shirt down, and out [of] the corner of her eye, saw the [Petitioner] walking away, she went back to sleep. She says that, later, she was woken when the [Petitioner] had a – not his entire hand, but had a finger, at least one or more, down the front of her pants, was tugging at her pants, and the finger was in the vaginal area. It had not penetrated her vagina, but it was in the vaginal area. And that she, in fact, did know that it was the [Petitioner] doing this to her. She turned away again. He apparently went on, got ready and went to work. She locked herself in the bathroom, though, in the meantime, to feel safe.

Although, she had, previously, spent a lot of time over at her grandmother's house, because her grandmother has health issues. And she not only just spent time with her grandmother, but she was sort of her little nurse too. But she became reluctant – both the child and the mother would testify, she became reluctant to stay at her grandmother's house.

Occasionally, when she did stay at her grandmother's house, or was around her grandmother, she'd stick real[ly] close to her grandmother after that. And I would like to incorporate my records, all the proof that's been introduced at the trial already, and also on the 404(b) hearing.

The Petitioner agreed that the facts recited by the State were true. The trial court thoroughly explained the elements of the charged offense to the Petitioner. The trial court explained that, by entering a plea of guilty, the Petitioner was giving up his right to a jury trial and any appeal of any adverse decision by the jury. The trial court accepted the plea and entered the judgment of conviction on April 7, 2017. The judgment includes that the provisions of the sex offender registry apply.

On June 29, 2018, the Petitioner filed a petition for post-conviction relief. In it he alleged that his guilty plea was not knowingly and voluntarily entered and that his trial counsel was ineffective for failing to investigate the case against him and for failing to prepare a defense. In an attached memorandum of law, the Petitioner acknowledged that he had filed the petition outside the one-year statute of limitations, but he contended that due process required a tolling of the statute of limitations. The Petitioner asserted that Counsel was "negligent and engaged in a misconduct when pursuing [the Petitioner's] post-conviction remedies."

The Petitioner's memorandum details that he had hired a California law firm, Liberty Bell Law Group by contract on July 17, 2017. He later learned that Liberty Bell Law Group had no attorneys licensed in Tennessee, and it assigned him a local lawyer,

4

who then forwarded him to another attorney. He alleged that it was during this time period that the statute of limitations expired. The local Tennessee attorney informed the Petitioner that the one-year statute of limitations had expired after the expiration date and informed the Petitioner that he would not take the case. The Petitioner acknowledged that Liberty Bell Law Group sent him a letter dated February 12, 2018, in which it stated that if he wanted to file a petition for post-conviction relief that he must do so by April 7, 2018. He further acknowledges that Liberty Bell reviewed the court documents and transcripts, but he complains that Liberty Bell "failed to ask [him] about off the record promises and issues between [him] and his lawyer that could serve as the basis for post-conviction relief."

The documentation attached to the Petitioner's petition shows that he hired Liberty Bell Law Group for "Evaluation of post conviction matter" on July 17, 2017. Liberty Bell sent him a letter dated February 12, 2018, informing him that their local Tennessee counsel, Counsel Stephenson, had evaluated his post-conviction claim. The letter detailed the law applicable to a post-conviction claim and then it stated:

> Based on a review of all the documents provided paying close attention to the transcripts and the fact that your previous attorney engaged the services of an expert to review the forensic interview, engaged the services of a polygraph examiner, and filed a motion in limine to keep out prejudicial testimony, there is nothing in the record that suggests that a judge would find the attorney's performance deficient and therefore we do not think a Petition for Post Conviction relief is advisable. Further you could have been sentenced to a range of 3-6 years in prison if you had gone to trial and lost. Your attorney was able to get you placed on Community Corrections for a period of four (4) years. If you still want to file a Petition for Post Conviction Relief please be advised that you will have a one year deadline to file. That deadline would be April 7, 2018.

The State responded that the Petitioner was not entitled to have the statute of limitations tolled. It noted that the Petitioner had chosen to enter his guilty plea after hearing the victim testify during a 404(b) hearing; that his Counsel had informed him of the consequences of the plea; that he understood the sex offender registry requirements; and that his post-conviction claims had no merit. The State further contends that Liberty Bell Law Group "[a]t no time . . . act[ed] in a manner that would be defined as 'misconduct' under the case law. No one lied to the Petitioner; no one abandoned him; no one led him to believe something that was untrue. There was no negligence, much less deception or misconduct."

The trial court held a hearing on the matter on October 19, 2018,[2] during which the parties presented the following evidence:  The Petitioner testified about his trial, saying that he recalled the jury being empanelled and the victim's testimony during the jury out hearing.  He said that, after the victim's testimony, his attorney informed him of the State's plea offer.  The Petitioner said that he took the plea offer "not for guilt" but because "everything would be cleared and just wiped away after 10 years."

The Petitioner stated that he had not signed the plea agreement contained in the record, which purported to have his signature.  The Petitioner testified that at the time he entered his plea Counsel informed him that the plea agreement included that he was going to be sentenced to ten years on the Sex Offender Registry.  The Petitioner recalled that Counsel made this statement in the presence of the Petitioner's father.  Seven or eight months later, the Petitioner leaned that, after ten years, he could submit a form to have his name removed from the Sex Offender Registry.  The Tennessee Bureau of Investigations, however, informed him that based on his charges he did not qualify for the ten-year request and would be on the registry for life.

The Petitioner further recalled that his original plea agreement did not include the provision that he could not be around, befriend or communicate with any person that is a minor child.  The Petitioner said that, while he told the judge at his plea hearing that he had not been forced or coerced into pleading guilty, he felt that his plea was based on false information.  He reiterated that he did not understand that he would be subject to Community Supervision for life or that he would be restricted from communicating with any minor child.  He maintained that Counsel told him that he would only be subject to Community Supervision for ten years.

The Petitioner affirmed the events documented in his post-conviction memorandum.  He explained hiring Liberty Bell Law Group, their hiring of Counsel Stephenson, and Counsel Stephenson's letter opining that the Petitioner was not entitled to post-conviction relief and informing the Petitioner that his statute of limitations was due to expire shortly.  The Petitioner added that, when he first received the transcripts from Liberty Bell, they were not complete and were missing a section.  Liberty Bell informed him that the missing portion was from when a court reporter had been unable to understand what was said during a portion of the testimony.  The Petitioner said that the missing portion of the transcript included the trial court judge saying that the charges against him did not fit the crime, to which the trial judge responded "[t]hat didn't happen."  The Petitioner went on to state that, whatever occurred during the missing portion of the transcript, Liberty Bell did not assist him in recovering that information.  Liberty Bell also did not use this missing portion of the transcript when determining that

---

2 The Petitioner's testimony is summarized from two different sets of testimony, both of which were given on the same day.

6

the Petitioner's case did not merit pursuing post-conviction relief.

The Petitioner testified that, eventually, Liberty Bell told him to get a local attorney to pursue any post-conviction claims, and sent him to Counsel Stephenson. The Petitioner said he believed that Counsel Stephenson would file his post-conviction petition. Counsel Stephenson told the Petitioner to get a different attorney closer to Lynchburg and not Nashville, where Counsel Stephenson was located, so he contacted Counsel Davis. The Petitioner said that Counsel Davis led him to believe that Counsel Davis had filed a petition for post-conviction relief on his behalf. The Petitioner based this belief on Counsel Davis's phone message during which he said that the Petitioner should come in to his office and talk, and that Counsel Davis would "take care of it." The Petitioner said that he never paid Counsel Davis any money because Counsel Davis asked for a lump sum of $25,000 to handle the case. After the Petitioner failed to pay Counsel Davis, Counsel Davis informed the Petitioner that he was not going to take his case.

The Petitioner said that he then contacted his original trial Counsel and asked him why he was being placed on the Sex Offender Registry for life when Counsel had told him he would only be on it for ten years. The Petitioner said that he was aware that his April 7 statute of limitations was approaching. The Petitioner asked Counsel to file a petition for post-conviction relief on his behalf.

During cross-examination, the Petitioner agreed that the plea agreement had remained similar throughout plea negotiations, but, when the State agreed to drop the requirement of jail time, the Petitioner accepted the plea deal. The Petitioner agreed that the paperwork associated with his plea agreement did not include that he would be released from the Sex Offender Registry in ten years. The Petitioner said he could not recall whether he did his own research about the registry. He also could not recall whether, when he registered as a sex offender in Coffee County, he was informed that he would be subject to the registry for life.

The Petitioner alleged that he falsely confessed to these offenses. He stated that he told Counsel this and that Counsel told him that "those type of things [are] not relevant to the case." The Petitioner maintained Counsel told him that he would be off the Sex Offender Registry in ten years' time, but he said that Counsel never expounded on how that would take place.

The Petitioner said that Counsel Davis never agreed to take his case and told him to contact his trial attorney. Based on this advice, the Petitioner contacted Counsel about March 4, 2018, when he emailed Counsel and told him that he needed to ask permission to be around his nieces as long as an adult is present and also to go to church without a

chaperone. Counsel said he would look in to it. On April 12, Counsel informed him that, if he needed any additional filings, the Petitioner needed to get another attorney because Counsel no longer represented the Petitioner.

Upon questioning from the trial court, the Petitioner's counsel stated that the Petitioner's argument was primarily that he was promised he would only be on the Sex Offender Registry for ten years, which prompted him to halt his jury trial and enter a plea of guilty. The State informed the trial court that the Petitioner could apply in ten years to be removed from the registry but that there was "absolutely no guarantee" that his request would be granted.

The Petitioner's father, A.J. Judge, testified that he heard trial Counsel tell the Petitioner that the plea agreement included that the Petitioner would be on the Sex Offender Registry for ten years and that it would go "really fast."

During cross-examination, Mr. Judge agreed that he was not present during Counsel's pretrial meetings with the Petitioner.

The Petitioner was re-called and clarified that he had received an email from the TBI that informed him that, based upon his charges, he would be subject to the Sex Offender Registry for life. During recross-examination the Petitioner said that Counsel never "promised" him that he would be off the Sex Offender Registry in ten years. He further agreed that Counsel had not promised him anything. During redirect-examination the Petitioner stated that Counsel told him he would be off the registry in ten years.

Counsel testified that the Petitioner had retained him to help defend him against these charges. Counsel and the Petitioner met on close to twenty occasions, and the two discussed the Sex Offender Registry "at length." The Petitioner brought Counsel paperwork that he had found online. During one of their meetings, the Petitioner asked if he would still be able to be involved with the youth at church. In the Petitioner's presence, Counsel contacted Libby Sticsell,[3] his friend who worked at the Coffee County Parole and Probation Office, and she explained to the Petitioner the Sex Offender Registry with regard to the specific charge that he faced. Counsel said that he explained to the Petitioner that the Sex Offender Registry dictated a mandatory reporting requirement for ten years but that, thereafter, he could file an application to be taken off of a "reporting basis." He said that the two did not discuss the Petitioner coming off of the registry all together, simply that he may not have to report after ten years.

Counsel recalled the days leading to the guilty plea. He said that the jury was

---

3 This name was spelled phonetically by the court reporter.

chosen and then the victim testified in a 404(b) hearing. The trial court ruled on the motion, and many of the rulings were in the defense's favor, in that the trial court said the victim could not testify about other acts by the Petitioner. Counsel said he was concerned, however, because the trial court in his ruling said that he found the victim truthful and honest. Counsel became concerned that the jury would respond similarly to the victim's testimony.

Counsel testified that he did not see anything added to the judgment form or the plea agreement documents. He said that the documents both contained the agreements between the parties with regard to the plea agreement. He further stated that he read the plea agreement document verbatim to the Petitioner. He found it "highly unlikely" that the plea agreement did not have the handwritten provisions at the time the Petitioner signed it, stating that he would have noticed if the Sex Offender Registry requirement was omitted. He again stated that the agreement encompassed the negotiations and agreement of the parties.

Counsel said that the Petitioner never confessed to this offense, so he expressed confusion as to why the Petitioner claimed that Counsel did not properly investigate his "false confession." In fact, the Petitioner adamantly denied the charge against him.

Counsel testified that the Petitioner contacted him before the statute of limitations had expired but asked for him to file a motion to redo his plea because he wanted to be around his niece and nephew. The Petitioner informed Counsel about what he had learned from the TBI. Counsel told the Petitioner that he no longer represented the Petitioner, so he needed to seek other legal counsel.

Counsel said that he received a phone call from a Liberty Bell in California regarding post-conviction proceedings. He returned her phone call and spoke with her about the matter. He obtained a release from the Petitioner, and then he shared his file on the Petitioner's case with the law group. He received confirmation that Liberty Bell received the file. He then also sent another copy of the file to a lawyer in Nashville that was somehow affiliated with Liberty Bell. He received confirmation that the Nashville lawyer got the file.

During cross-examination, Counsel reiterated that he only told the Petitioner that, after ten years, he might be able to apply to stop reporting. Counsel explained that he and the Petitioner had engaged in multiple conversations about the Sex Offender Registry requirements before the trial, so he surmised that Mr. Judge misunderstood their conversation on the morning of the guilty plea. Counsel opined that the Petitioner decided to plead guilty after the State dropped the requirement that he serve any jail time. Further, after the victim testified, Counsel offered his opinion to the Petitioner that he

believed that the Petitioner would be convicted. Counsel did not think that the Petitioner was induced to plead guilty based upon the fact that he may no longer have to report to the Sex Offender Registry after ten years.

During redirect examination, Counsel said that the offer that the Petitioner accepted was the same offer that had been the subject of negotiation between the parties for some time, minus the jail time requirement. Before this offer, the parties had discussed a different plea, which included that the Petitioner serve more jail time but not be on the Sex Offender Registry, and the Petitioner rejected these offers.

Barbara Detullo, with the TBI, testified that Ms. Sticsell, with whom the Petitioner and Counsel spoke regarding the Sex Offender Registry, was a supervisor over sex offenders on the Sex Offender Registry in Coffee and Cannon County. Ms. Detullo said that Ms. Sticsell was one of the best in their department and would have been a good resource for information about the Sex Offender Registry requirements.

During cross-examination, Ms. Detullo testified that she was aware of the Petitioner's charges and, while considered a violent offense, he was still eligible after ten years to come off the reporting portion of the registry. That determination, however, was made by the TBI at the time that he applied. Ms. Detullo testified that she knew a person on her staff named "Shelly Smitherman," but she was unsure whether Ms. Smitherman had communicated with the Petitioner and informed him that he would be on the Sex Offender Registry for his lifetime.

During redirect-examination, Ms. Detullo testified that, even if the reporting requirement is lifted, the other restrictions of the Sex Offender Registry remain in place. This means that a defendant on the registry still may not see his minor niece and nephew even if the application to cease reporting is granted. Ms. Detullo further clarified that the Petitioner was not required to have no contact with his minor niece and nephew but that contact with minors must be supervised.

Based upon this evidence and the argument of counsel, the post-conviction court concluded that due process did not require a tolling of the statute of limitations. It found:

> [T]o determine whether a due process tolling arises under the statute of limitations it is necessary first to ascertain the date when the statute would have expired. This would have been [April] 8, 2018. . . . Second, the grounds alleged for any relief of conviction were not grounds arising after the tolling of the statute of limitations as the Petitioner, apparently, learned he would continue to be subject to the SOR after the 10 years when he spoke with someone from the TBI. Third, the only argument the

10

Petitioner could possibly present here is he would be denied his opportunity to be heard if the tolling of the statute of limitations were strictly applied, but that is true anytime the statute is applied.

Of the three (3) scenarios of when a due process tolling should be applicable one would be whether there was misconduct on the part of any attorney in not timely filing any petition for post conviction relief. Even at that it must be shown the Petitioner was diligently pursuing his remedies and that some circumstance, external to the Petitioner, prevented him from timely filing. However, this is reserved for the rarest of cases.

Petitioner had been going from one attorney to another attempting to find someone to handle the post conviction matter. However, it appears he had no takers. Liberty Bell investigated his case and referred it to [Counsel] Stephenson, as local counsel. In a letter dated February 12, 2018, . . . Liberty Bell had [Counsel] Stephenson review the file and it was their opinion there was no basis for post conviction relief. The letter further advised Petitioner of the date of the statute of limitations. The post conviction court is a little unclear how Petitioner, got to [Counsel] Davis . . . . However, by approximately February 12, 2018, Petitioner was aware of the statute of limitations and that Liberty Bell did not think the petitioner would be "advisable." The Liberty Bell letter conclude with "We wish you the best of luck" and signed by [Counsel] Stephenson as Tennessee local counsel and someone named Michele Kendall, who the post conviction court assumes is associated with Liberty Bell. The whole tenor of the letter is a "thanks but no thanks" by Liberty Bell stating the matter has no merit and they are not interested in pursuing the petition.

This above situation does not rise to the level of attorney abandonment or misconduct and certainly not to those rare cases wherein a gross injustice would occur by applying the statute of limitations. The Petitioner's own testimony is undermined by the testimony of his father and the contents of the letter of February 12, 2018, from Liberty Bell. The fact of the matter is Petitioner could not find anyone who was interested in taking his case. The Petitioner could have just as well filed his own pro se petition, as it is rare indeed to have the original filing done by retained counsel. (at least in the experience of [this judge]). These forms are readily available and the Petitioner was aware of the availability of this type of relief. The post conviction court finds there is no basis for a due process tolling of the statute of limitations.

11

The post-conviction court went on to find that, even if due process required a tolling of the statute of limitations, the Petitioner had not proven his post-conviction claims by clear and convincing evidence.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that due process requires a tolling of the statute of limitations in his case because he was not able to present his claims at a meaningful time and in a meaningful manner because his trial counsel's conduct was "so egregious that he missed the filing deadline." He goes on to state that his petition for post-conviction relief was meritorious. The State counters that the facts alleged by the Petitioner, even if true, do not "rise to the level of attorney misconduct required by the law." The State further contends that, as the post-conviction court held, the Petitioner's petition lacks merit.

Tennessee Code Annotated section 40-30-102 provides that a petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final," otherwise, "consideration of the petition shall be barred." T.C.A. § 40-30-102(a) (2019). "Time is of the essence of the right to file a petition for post-conviction relief." *Id*. Untimely filing of a post-conviction petition extinguishes a petitioner's post-conviction claims. *Id.* The statute of limitations for filing a post-conviction petition is jurisdictional. T.C.A. § 40-30-102(b) ("No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless [certain statutory prerequisites are met].").

A petition for post-conviction relief filed outside the one-year statute of limitations may nevertheless be considered if its allegations fall within three rather narrow exceptions:

(1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

(2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or

12

offenses for which the petitioner was convicted; or

(3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

T.C.A. § 40-30-102(b).

Additionally, due process principles may, in very limited circumstances, require tolling of the post-conviction statute of limitations. *See Williams v. State*, 44 S.W.3d 464, 468 (Tenn. 2001); *See also Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992); *see also generally Seals v. State*, 23 S.W.3d 272 (Tenn. 2000). If a petitioner faces circumstances beyond his control, due process concerns allow courts to review an otherwise untimely post-conviction petition. The Tennessee Supreme Court has outlined limited circumstances which call for due process tolling of untimely post-conviction petitions. To qualify, a petitioner must prove his post-conviction petition was untimely due to mental impairment or attorney misrepresentation. *See Williams*, 44 S.W.3d at 470-71; *Seals v. State*, 23 S.W.3d 272, 277-80 (Tenn. 2000). Additionally, a petitioner is entitled to due process tolling if the grounds for post-conviction relief arose after the running of the statute. *See Sands v. State*, 903 S.W.2d 297, 301-02 (Tenn. 1995) (citing *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). "In every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances beyond a petitioner's control prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." *Smith v. State*, 357 S.W.3d 322, 358 (Tenn. 2011) (emphasis omitted). Thus, in order to succeed, a petitioner must provide sufficient facts which prove one of these limited circumstances affected the filing of his post-conviction petition. *Eddie Williams v. State*, No. W2011-00202-CCA-R3-PC, 2011 WL 2410364, at *1-2 (Tenn. Crim. App., at Jackson, June 9, 2011), *perm. app. denied* (Tenn. Oct. 18, 2011). Absent sufficient facts establishing a petitioner is entitled to due process tolling, an untimely petition must be dismissed. *Id*.

On appeal, the Petitioner concedes he filed an untimely post-conviction petition but asserts due process concerns should toll the one-year statute of limitations. However, no facts exist to support due process tolling of the one-year statute of limitations. The record reveals that the Petitioner's judgment was entered on April 7, 2017, and became final on became final on May 8, 2017. As such, the statute of limitations for the Petitioner's post-conviction claim expired on May 8, 2018. The Petitioner filed his petition on June 29, 2018. Thus, the petition was untimely.

13

We agree with the post-conviction court's assessment of the Petitioner's claims. Nothing in the record supports the due process tolling of the statute of limitations for the Petitioner's claims. The record shows the Petitioner was aware that Liberty Bell had a local attorney investigate his case and that the local attorney concluded that it lacked merit. In a letter dated February 12, 2018, Liberty Bell informed the Petitioner that if the Petitioner chose to pursue post-conviction claims, the statute of limitations expired on April 8, 2018. Liberty Bell Law Group committed no act of misconduct under the law. In fact, they simply informed the Petitioner that his case lacked merit, informed him of the statute of limitations almost two months before it had run, and wished him luck. No one lied to the Petitioner or abandoned him. The record makes clear the Petitioner filed his post-conviction petition outside of the one-year limitations period, and he has failed to present any facts to support due process tolling of the statute of limitations. Accordingly, the order of the post-conviction court denying the Petitioner's post-conviction petition as time-barred must be upheld.

As this Court has previously explained, "due process serves to toll the post-conviction statute of limitations for petitioners who face circumstances beyond their control . . . which preclude them from actively raising their post-conviction claims." *Crystle D. Rutherford v. State*, No. M2013-01575-CCA-R3-PC, 2014 WL 1669960, at *2 (Tenn. Crim. App., at Nashville, Apr. 25, 2014) (citing *Williams*, 44 S.W.3d at 469). The Petitioner failed to demonstrate how circumstances beyond his control caused his petition for post-conviction relief to be untimely. Again, the Petitioner was aware of the post-conviction process, statute of limitations, and had sufficient knowledge of his case. Yet, the Petitioner failed to file his petition in a timely manner. The Petitioner has failed to show how exceptional circumstances prevented him from timely filing his petition for post-conviction relief or that he diligently pursued his rights. Additionally, we find no error in the post-conviction court's finding that, even if deemed timely, the petition for post-conviction relief has no merit. Thus, the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that there was no error and, as such, we affirm the post-conviction court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

14